**Appeal No. 23-15279**

---

**IN THE UNITED STATE COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

**NICHOLAS YAROFALCHUW**
Plaintiff-Appellant,
vs.
**JOHN CABRERA and DANNY FITIAL**
Defendants-Appellees.

---

# ANSWERING BRIEF OF APPELLEE, SERGEANT JOHN A. CABRERA

Appeal from the United States District Court
For the Northern Mariana Islands
The Honorable Ramona V. Manglona
United States District Judge
No. 1:22-CV-00001


J. Robert Glass, Jr. (F0523)
Chief Solicitor
Office of the Attorney General
Honorable Juan A. Sablan
Memorial Building 2nd Floor
Saipan, MP 96950
Tel: (670) 237-7500
Fax: (670) 664-2349
Email: robby_glass@cnmioag.org
*Attorney for Defendant-Appellee Sgt. Cabrera*

## TABLE OF CONTENTS

**I. INTRODUCTION .......... 5**

**II. JURISDICTIONAL STATEMENT .......... 5**

**III. STATEMENT OF THE ISSUES PRESENTED .......... 6**

**IV. STATUTORY AND REGULATORY AUTHORITIES .......... 6**

**V. STATEMENT OF THE CASE .......... 6**

**VI. STANDARD OF REVIEW .......... 11**

**VII. ARGUMENT** .......... 12

- A. Sergeant Cabrera is Entitled to Qualified Immunity .......... 12
  1. Sergeant Cabrera did not violate Plaintiff's Constitutional Rights. .......... 12
     - a. There was probable cause for an arrest. .......... 13
     - b. The arrest occurred in a public space. .......... 15
  2. There was no violation of any clearly established right. .......... 19
  3. A reasonable but mistaken belief would still allow for qualified immunity. .......... 22
- B. The District Court Properly Denied Plaintiff's Motion for Leave to Amend Complaint .......... 24
  1. Federal Rule of Civil Procedure 16 requires good cause to modify a scheduling order. .......... 24
  2. Mr. Yarofalchuw lacked the judge's consent. .......... 25
  3. Mr. Yarofalchuw cannot establish good cause because he was always aware of the claim. .......... 25
  4. Denial Under Rule 15 Would have Been Proper. .......... 28

**VIII. CONCLUSION .......... 30**

## TABLE OF AUTHORITIES

### Cases

*Acri v. International Ass'n of Machinists and Aerospace Workers*,
781 F.2d 1393 (9th Cir. 1986) .......... 27
*Boyd v. Benton County*,
374 F.3d 773 (9th Cir. 2004) .......... 21
*California v. Ciraolo*,
476 U.S. 207 (1986) .......... 17
*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 20000) .......... 27, 28
*Commonwealth v. Bowie*,
3 NMI 462 (1993) .......... 14, 24
*Commonwealth v. Inos*,
2013 MP 14 .......... 15
*County of Los Angeles, California v. Mendez*,
581 U.S. 420 (2017) .......... 30
*Desertrain v. City of Los Angeles*,
754 F.3d 1147 (9th Cir. 2014) .......... 12
*District of Columbia v. Wesby*,
138 S.Ct. 577 (2018) .......... 20
*Emmons v. City of Escondido*,
921 F.3d 1172 (9th Cir. 2019) .......... 20, 21
*Evans v. Skolnik*,
997 F.3d 1060 (9th Cir. 2021) .......... 12, 21
*Graham v. Connor*,
490 U.S. 386 (1989) .......... 30
*Jordan v. Los Angeles County*,
669 F.2d 1311 (9th Cir. 1982) .......... 30
*Lozano v. Doe 1*,
591 F.Supp.3d 700 (C.D. Cal. 2022) .......... 22
*M/V American Queen v. San Diego Marine Const. Corp.*,
708 F.2d 1483 (9th Cir. 1983) .......... 28, 29
*Metro PD*,
765 F.3d 1154 (9th Cir. 2014) .......... 13
*Moore v. Kayport Package Exp., Inc.*,
885 F.2d 531 (9th Cir. 1989) .......... 29

*New York v. Harris*,
495 U.S. 14 (1990) .................... 14
*Payton v. New York*,
445 U.S. 573 (1980) .................... 18
*Pearson v. Callahan*,
555 U.S. 223 (2009) .................... 13, 23, 24
*United States v. Botero*,
589 F.2d 430 (9th Cir. 1978) .................... 24
*United States v. Dunn*,
480 U.S. 294 (1987) .................... 19
*United States v. Lundin*,
817 F.3d 1151 (9th Cir. 2016) .................... 16, 22
*United States v. Perea-Rey*,
680 F.3d 1179 (9th Cir. 2012) .................... 16, 17, 22
*United States v. Santana*,
427 U.S. 38 (1976) .................... 18, 22, 24
*United States v. Vaneaton*,
49 F.3d 1423 (9th Cir. 1995) .................... 24
*United States v. Watson*,
423 U.S. 411 (1976) .................... 14
*White v. Pauly*,
580 U.S. 73 (2017) .................... 20, 21

**Constitutions**

U.S. CONST. amend. IV .................... 13

**Statutes**

6 CMC § 3101 .................... 15
6 CMC § 6103 .................... 16

**Rules**

Fed. R. Civ. P. 15(a)(2) .................... 29, 30
Fed. R. Civ. P. 16(b) .................... 28
Fed. R. Civ. P. 16(b)(1) .................... 25
Fed. R. Civ. P. 16(b)(3)(A) .................... 25
Fed. R. Civ. P. 16(b)(4) .................... 26

# I. INTRODUCTION

A person is not seized for purposes of the Fourth Amendment simply by the presence of a police officer outside of the curtilage of the person's property. Where an officer has initiated contact via a "knock and talk" but then is subsequently requested to leave, an officer may retreat cautiously to an area outside of the curtilage; such retreat is not a show of force constituting a Fourth Amendment seizure. If a person then chooses to re-initiate contact with the officer by following the officer to the doorway of the curtilage, an officer with probable cause may then make a warrantless arrest. If an officer were to be factually (but reasonably) mistaken as to the precise location of the curtilage or the application of law regarding doorway arrests, he would be protected from suit by qualified immunity. Such is the case with Defendant-Appellee, Sergeant John Cabrera, and the Plaintiff-Appellant, Nicolas Yarofalchuw.

# II. JURISDICTIONAL STATEMENT

Defendant-Appellee, Sgt. John Cabrera, agrees with the jurisdictional statement of Plaintiff-Appellant as it related to Sgt. Cabrera.

## III. STATEMENT OF THE ISSUES PRESENTED

1. Whether the district court erred in granting Sgt. Cabrera's cross-motion for summary judgement.
2. Whether the district court erred in denying Mr. Yarofalchuw leave to amend his complaint.

## IV. STATUTORY AND REGULATORY AUTHORITIES

All relevant statutory and regulatory authorities are contained in the addendum to this brief.

## V. STATEMENT OF THE CASE

### Facts

On May 10, 2021, Defendant-Appellee, Sergeant John A. Cabrera ("Sgt. Cabrera"), responded to a 911 call from James Roberto, a CNMI Department of Fish and Wildlife ("DFW") employee who was threatened with gun violence by Plaintiff-Appellant, Nicholas Yarofalchuw ("Yarofalchuw"). SER-4—5; ER-87; and ER-121. Upon arriving at the location, Sgt. Cabrera met with Mr. Roberto, who described two incidents (April 8, 2021 and May 10, 2021) in which the employee was threatened by Mr. Yarofalchuw. SER-5 and ER-155—157. Mr. Roberto stated that

Mr. Yarofalchuw threatened to shoot down an alleged drone owned by DFW as well as to shoot any DFW employee. SER-5 and ER-156—157. Mr. Roberto relayed that Mr. Yarofalchuw was with three other individuals and provided a description of all four individuals involved. *Id.* Mr. Roberto stated he felt unsafe because of Mr. Yarolfalchuw's actions and he called out of work and went home. ER-156—157.

Sgt. Cabrera then attempted to locate the four individuals to get their statements for his investigation and to offer a solution. SER-5 and ER-87. He found the four individuals sitting outside a residence, drinking, just down the street from where the 911 call was made. *Id.* Officer Danny Fitial arrived at the scene with Sgt. Cabrera, but departed since no backup was necessary at that point. SER-5 and ER-83. Sgt. Cabrera pulled into the driveway of Mr. Yarofalchuw's property to conduct a knock-and talk. SER-5 and ER-87—88. The conversation started out peacefully, but once the subject of the DFW employee encounter was broached, Mr. Yafofalchuw became irate and belligerent. SER-6; ER-88; and ER-122. While the three other individuals and Sgt. Cabrera attempted to calm Mr. Yarofalchuw down, he began to scream obscenities, requesting Sgt. Cabrera to leave his property. ER-88. Sgt.

Cabrera, who was still in his vehicle, clicked on his radio so that central dispatch and other officers could hear that backup was needed. ER-88. He then began to cautiously back out of the driveway and then parked his vehicle outside of the curtilage of Mr. Yarofalchuw's property. SER-6; ER-73; and ER-88. Sgt. Cabrera's vehicle was not blocking the driveway. SER-6; ER- 73; ER-83; ER-88; and ER-122. As Sgt. Cabrera was leaving the property, Mr. Yarofalchuw slammed down his beer and rushed inside of his home. ER-88. After parking outside of the curtilage, Sgt. Cabrera could see the other three individuals get into a vehicle to leave, so he got out of his vehicle to collect their information and asked them to wait. SER-7 and ER-89. At this time, Mr. Yarfalchuw was inside his home and did not see the officer approach the vehicle. ER-20; 71; and 89. The three other individuals complied with his request. SER-7 and ER-89. Sgt. Cabrera then returned to his vehicle at the same time Mr. Yarofalchuw came out of his house and Officer Fitial arrived back on scene. SER-7—8; ER-73; ER-83; and ER-89.

Mr. Yarofalchuw had an object that Sgt. Cabrera later found out to be a phone in his hand as he rushed toward Sgt. Cabrera while still yelling profanities. SER-7; ER-83; and ER-89. While Sgt. Cabrera was

standing near his parked vehicle outside of the curtilage of Mr. Yarofalchuw's property, Mr. Yarofalchuw held the phone close to the face of Sgt. Cabrera. SER-8; ER-83; and ER-89. Officer Fitial raised a concern to Sgt. Cabrera that Mr. Yarofalchuw was within Sgt. Cabrera's safety zone. ER-83 and 90. Officer Fitial then moved to restrain, but not arrest Mr. Yarofalchuw for officer safety, pulling him closer to Officer Fitial's vehicle. ER-76 and 90. Mr. Yarofalchuw resisted and was subsequently arrested for disturbing the peace in relation to his encounter with the DFW employee whom he threatened to shoot. SER-8 and ER-90. Mr. Yarofalchuw was placed into Officer Fitial's vehicle and transported for COVID clearance and then to the Department of Corrections. ER-84.

## Procedural History

On January 3, 2022, Mr. Yarofalchuw filed a Complaint alleging a single cause of action for deprivation of civil rights for an unreasonable seizure. SER-8 ; ER-4; ER-197—200; and ER-211. The Complaint did not make any mention of excessive force either as its own cause of action or as a part of the unreasonable seizure claim. *Id*. Defendants filed their Answers on March 1, 2022. SER-8; ER 171—172; and ER-210—211. A case management order was entered setting forth the various deadlines

for amending pleadings, discovery, and trial. ER-210. Specifically, the Joint Case Management Statement specifically contained that "No party expects to add any additional parties or to otherwise amend the pleadings." SER-30—32 and ER 5. After the district court set these deadlines, Mr. Yarofalchuw moved for summary judgment and the Defendants moved for cross-summary judgment. SER-9; ER-5; and ER-209—210.

On September 1, 2022, the district court granted Defendant Fitial's Summary Judgment motion based on qualified immunity and he was dismissed from the case, but the district court required more briefing on the issue of qualified immunity for Sgt. Cabrera. SER-9; ER-5; and ER-122-A. Subsequently, the parties agreed to stay the pending deadlines for discovery, but agreed to keep the trial date. ER-5 and 85.

The parties made several additional motions and hearings on all of those motions, along with the continued summary judgment hearing, were conducted on December 1, 2022. SER-9 and ER-68-A. After the hearing, the district court granted the summary judgment motions of the Defendants, denied the motion to reconsider qualified immunity as to

Defendant Fitial, and allowed Mr. Yarofalchuw to file for leave to amend his complaint. SER-3—29 and ER-6.

Mr. Yarofalchuw moved to amend his complaint to include a claim of excessive force, and the Defendants opposed. Er-206. On January 12, 2023, the district court denied leave to amend. ER-4—14 and 206. Judgment was entered on February 2, 2023. ER-206. Mr. Yarofalchuw filed his notice of appeal on February 27, 2023. ER-201 and 205.

## VI. STANDARD OF REVIEW

The standard of review of a district court's order granting summary judgment based on qualified immunity is de novo. *Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021) (citation omitted).

While the standard of review for a district court denying leave to amend a complaint is an abuse of discretion, *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (citation omitted), in cases involving the preclusive effects of orders directing pretrial litigation, the standard is a clear abuse of discretion. *Johnson v. Mammoth Recreations, Inc.*, 975F.2d 604, 607-608 (9th Cir. 1992) ("The district court is given broad discretion in supervising the pretrial phase of litigation, and its

decisions regarding the preclusive effect of a pretrial order…will not be disturbed unless they evidence a clear abuse of discretion.”).

## VII. ARGUMENT

### A. Sergeant Cabrera is Entitled to Qualified Immunity.

Qualified immunity extends to government officials whose “conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It properly balances the need to hold public officials accountable while also ensuring that they are shielded from suit when they do their jobs reasonably. *Id*. Determining qualified immunity requires a two-prong examination in which the court may address either prong first. *Sandoval v. Las Vegas Metro PD*, 765 F.3d 1154, 1160 (9th Cir. 2014). The evidence is viewed in a light most favorable to the non-moving party and must show (1) a violation of a constitutional right, and (2) that the right was clearly established at the time of the defendant’s alleged misconduct. *Id*.

#### 1. Sergeant Cabrera did not violate Plaintiff’s Constitutional Rights.

The Fourth Amendment protects against “unreasonable searches and seizures.” U.S. CONST. amend. IV. Generally, while warrants are

preferred, warrantless arrests in public spaces based on probable cause are constitutionally permissible. *See United States v. Watson*, 423 U.S. 411, 423-24 (1976) (warrantless arrest of person in public space with probable cause does not violate Fourth Amendment); *New York v. Harris*, 495 U.S. 14, 18 (1990) (holding that "[I]t ha[s] long been settled that a warrantless arrest in a public place was permissible as long as the arresting officer had probable cause."). Commonwealth law, likewise, allows for warrantless arrests based on probable cause. 6 CMC § 6103(c) ("[W]hen a criminal offense has been committed, and a police officer has reasonable grounds to believe that the person to be arrested has committed it, the police officer may arrest the person without a warrant."); *see also Commonwealth v. Bowie*, 3 NMI 462, 469 (1993) ("[A] warrantless arrest in a public place is permissible as long as the arresting officer has probable cause") (citation omitted).

**a. There was probable cause for an arrest.**

Mr. Yarofalchuw was arrested, without a warrant, for disturbing the peace ("DTP"), a misdemeanor that carries a maximum jail term of

six months in prison.[1] The allegation for the DTP charge was that Mr. Yarofalchuw threatened to shoot Mr. Roberto, a DFW employee. ER-147—148, 156—157 & 143 (Mr. Yarofalchuw admitting to threatening to shoot the alleged drone). The unlawful and willful act of threatening bodily harm upon the employee caused the employee to be scared and change his course of conduct. ER-156—157. Violent threats are the type of behavior that would unreasonably annoy or disturb someone as required by the statute. *See Commonwealth v. Inos*, 2013 MP 14 ¶ 16 (stating the "threat of violence" would be an action that would be "so unreasonably annoying or disturbing as to warrant criminal consequences"). Thus, Sergeant Cabrera had probable cause to make an arrest.

---

[1] 6 CMC § 3101 reads:

> A person commits the offense of disturbing the peace if he or she unlawfully and willfully does any act which unreasonably annoys or disturbs another person so that the other person is deprived of his or her right to peace and quiet, or which provokes a breach of the peace.

**b. The arrest occurred in a public space.**

The initial encounter occurred between Sgt. Cabrera in his vehicle and the four individuals drinking at the palapala.[2] ER-141; 143; and 148. The palapala was located near the front of the house as part of the front yard beside the driveway area of the house. ER-166. This "knock and talk" encounter was permissible as it was an area in which uninvited guests may enter. *See United States v. Perea-Rey*, 680 F.3d 1179, 1188 (9th Cir. 2012) ("An officer initiating a 'knock and talk' visit may approach any part of the building where uninvited visitors could be expected.") (cleaned up) (citation omitted). The purpose of the knock and talk was to ask questions regarding what happened with the Fish and Wildlife employee. ER-87 (intention to meet and offer solution); s*ee United States v. Lundin*, 817 F.3d 1151, 1160 (9th Cir. 2016) (no violation for "knocking on the front door with the intent to merely ask the resident questions, even if the officer has probable cause to arrest the resident").

When Mr. Yarofalchuw became irate and requested the officer to leave, Sgt. Cabrera backed his vehicle out of the yard and parked outside

[2] In the Commonwealth, the term "palapala" is used to refer to an open-air structure similar to a pavilion or gazebo.

the hedges demarcating the boundary line. ER-73; 74; and 76 (photos of where Sgt. Cabrera's vehicle was parked along the hedge).[3] Sgt. Cabrera cautiously retreated to the area outside of Mr. Yarofalchuw's property to conduct further surveillance. ER-19; s*ee Perea-Rey*, 680 F.3d at 188 (once the knock and talk fails, officers should "change their strategy by retreating cautiously, seeking a search warrant, or conducting further surveillance") (citation omitted). From this public vantage point, Sgt. Cabrera conducted further surveillance to ensure safety of himself and others. *California v. Ciraolo*, 476 U.S. 207, 213 (1986) (warrantless visual surveillance of a home is permissible where police are in public vantagepoints). Sgt. Cabrera did not block the driveway and ingress/egress was possible until Officer Fitial arrived on scene and parked behind Sgt. Cabrera. ER-73.[4]

[3] The hedges were also smaller at the time of the May 10, 2021 encounter. ER-88 ("The pictures…do not reflect the size of the plants during the incident on May 10, 2021.").

[4] The black truck in the picture represents Sgt. Cabrera's police vehicle. The white vehicle which represents Officer Fitial's vehicle arrived after Sgt. Cabrera parked his vehicle.

Mr. Yarofalchuw, who was inside his home, decided to exit his house and follow Sgt. Cabrera to the area outside the hedges in order to record him. ER-71; 76 (showing position of Sgt. Cabrera); 83; 89—90 (Mr. Yarofalchuw putting phone inches from Sgt. Cabrera's face). Mr. Yarofalchuw willingly left his home and property to record the officer and placed himself in a public space where he could be seen, heard, and touched. *See United States v. Santana*, 427 U.S. 38, 42 (1976) (acknowledging no Fourth Amendment violation when the defendant is in an area where there is no expectation of privacy and is not only visible, but "exposed to public speech, hearing, and touch as if standing completely outside [the] house"); *see also Payton v. New York*, 445 U.S. 573, 587 (1980) (affirming that persons and contraband in public view may be seized without a warrant when there is probable cause).

Taking the evidence in the light most favorable to Mr. Yarofalchuw, he left the privacy of his house. ER-71. He moved through his entire yard to reach, at best, the very edge of his property in order to re-initiate contact with the officer to video record the officer. ER-71—72. Sgt. Cabrera was clearly not on his property as he was beyond the hedge line and telephone pole. ER-73—74 and 76-77. ER-74 shows a telephone pole

and the hedge line, which any reasonable person would believe marks the end of Mr. Yarofalchuw's property. The parties in this case stipulated that the hedges (albeit smaller than they are in the pictures presented) and telephone pole represented the defining line for what would reasonably be understood to be the curtilage. ER-46—47. *See also United States v. Dunn*, 480 U.S. 294, 302 (1987) ("[F]or most homes, the boundaries of the curtilage will be clearly marked…"). As part of his moving papers, Mr. Yarofalchuw included pictures recreating the scenes as he believed them to have taken place. ER 73—77. ER-76 shows an individual in a pink shirt who represents Sgt. Cabrera standing beside a white truck that represents his police vehicle. The individual with the cell phone is Mr. Yarofalchuw who is standing beyond the edge of the hedges. ER-77 represents where Mr. Yarofalchuw was standing when he was arrested in presumptively the same place as in ER-76. The top of the driveway between the break in the hedges is not an area that "harbors the intimate activity associated with the sanctity of a [person's] home and the privacies of life." *Dunn*, 480 U.S. at 300 (cleaned up). Therefore, Mr. Yarofalchuw was in a public space where Sgt. Cabrera conducted a warrantless arrest based on probable cause.

**2. There was no violation of any clearly established right.**

For a right to be "clearly established," current existing law "must place the constitutionality of the officer's conduct beyond debate." *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (citations and internal quotes omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (citation omitted). Plaintiff bears the burden for showing the right was clearly established. *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019) (citation omitted). To be clearly established "means that at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would have understood that what he was doing is unlawful." *Id*. (cleaned up). But such "clearly established law should not be defined at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) ("*Pauly*"). In relying on *Pauly*, this Court has summed up the issue as follows: "liability will not attach unless there exists 'a case where an officer acting under similar circumstances … was held to have violated the Fourth Amendment.'" *Emmons v. City of Escondido*, 921 F.3d at 1174 (quoting *Pauly*, 580 U.S. at 79-80).

While a direct case on point is not required, "cases of controlling authority in the plaintiff's jurisdiction at the time of the incident which clearly established the rule on which they seek to rely or a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful" are required to meet the standard. *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021) (citations and quotations omitted). The Ninth Circuit examines if there is binding precedent from either the Supreme Court or the Ninth Circuit; if none, then the Ninth Circuit has held that "we have considered other sources including decisions of state courts, other circuits, and district courts." *Id.* (citing *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004)).

Sgt. Cabrera's actions were not of the type that they violated any clearly established law. Mr. Yarofalchuw bears the burden to show the right was clearly established. He has only cited and relied on cases generally establishing that an arrest without a warrant within a home or its curtilage violate the Fourth Amendment. *See Pauly*, 580 U.S. 73, 79 (2017) (per curiam). He has not, however, shown that an individual who leaves their home, walks across their entire yard to stand (at best) at the very precipice of the individual's property to re-initiate contact with an

officer is not subject to arrest for probable cause while being in a public space where he can be seen, heard, and touched. *See United States v. Santana*, 427 U.S. 38, 42 (1976). Nor has Mr. Yarofalchuw shown any case that a person standing within the doorway of their property where they have a diminished expectation of privacy are not subject to arrest based on probable cause.

A district court that recently analyzed the issue of a warrantless arrest based on probable cause occurring in the curtilage of the home during a "knock and talk" came to the conclusion that such activity was *not* clearly established as being against the Fourth Amendment. *See Lozano v. Doe 1*, 591 F.Supp.3d 700, 714-715 (C.D. Cal. 2022). The district court in *Lozano* analyzed the holdings of *Perea-Rey*, 680 F.3d 1179 (9th Cir. 2012), and *Lundin*, 817 F.3d 1151 (9th Cir. 2016), as well as other Ninth Circuit holdings to conclude that sometimes warrantless arrests even inside the home could occur where there is probable cause and a right to be present. *Id*. at 716.

Sgt. Cabrera was lawfully outside of the boundary line of Mr. Yarofalchuw's property. Mr. Yarofalchuw re-initiated contact with the officer in order to video record him. Mr. Yarofalchuw was also still acting

belligerent and irate. Such actions placed Mr. Yarofalchuw in public where he could lawfully be seized and arrested. There is no authority to support that, to the contrary, he could not lawfully be seized and arrested without violating his clearly established rights.

**3. A reasonable but mistaken belief would still allow for qualified immunity**.

Even if Sgt. Cabrera were mistaken and Mr. Yarofalchuw were inside his curtilage, Sgt. Cabrera would still be protected by qualified immunity. "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotes and citation omitted). Sgt. Cabrera believed Mr. Yarofalchuw was beyond his property line at the time of his seizure and arrest. ER- 90 ("At this time, we were outside of Mr. Yarofalchuw's property on the right-hand side of the driveway…"). Mr. Yarofalchuw acknowledges he was right at the edge of his property. ER-46 ("He was on the very edge of it, maybe another step or two, and he would have been outside it."). Even if Sgt. Cabrera were mistaken regarding his positioning and Mr. Yarofalchuw's, such was a

reasonable mistake of two steps, and he would be entitled to qualified immunity.

Sgt. Cabrera was "entitled to rely on existing lower court cases without facing personal liability for [his] actions." *Pearson*, 555 U.S. at 244-245. CNMI Supreme Court precedent established that warrantless arrests based on probable cause in the doorway of the home do not violate the Fourth Amendment. *See Commonwealth v. Bowie*, 3 NMI 462, 469 (1993); *accord United States v. Santana*, 427 U.S. 38, 42 (1976); *United States v. Botero*, 589 F.2d 430, 432 (9th Cir. 1978); and *United States v. Vaneaton*, 49 F.3d 1423, 1427 (9th Cir. 1995). The underpinning of all of these cases is that each defendant's exposure to the public resulted in the loss of the defendant's expectation of privacy when the defendant stood exposed at the doorway of the home. Similarly, Mr. Yarofalchuw voluntarily put himself at the "doorway" of his curtilage. ER-76—77 and 89—90. No coercion was used by police to get him to come out of his house, cross his yard, and step beyond the boundary line of his property. *See Vaneaton*, 49 F.3d at 1427 (finding no coercion and no use of "subterfuge or a ruse, or draw[ing of] weapons" to get defendant to open door and present at doorway). Even if Sgt. Cabrera were mistaken as to the state

of the law and the "doorway" cases are no longer valid, such has not been expressly established by either this Court or the Supreme Court. Sgt. Cabrera would still be entitled to qualified immunity for his reasonable reliance on the string of "doorway" cases.

### B. The District Court Properly Denied Plaintiff's Motion for Leave to Amend Complaint.

#### 1. Federal Rule of Civil Procedure 16 requires good cause to modify a scheduling order.

The district court has wide latitude in controlling its docket. *See Johnson v. Mammoth Recreations, Inc.*, 975F.2d 604, 607-608 (9th Cir. 1992) ("The district court is given broad discretion in supervising the pretrial phase of litigation…") (citation omitted). Civil Procedure Rule 16 provides that a district court "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The scheduling order is based on the parties' representations to the court. Fed. R. Civ. P. 16(b)(1). "Once the district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16…that rule's standards control[]." *Johnson v. Mammoth Recreations, Inc.*, 975F.2d 604, 607-608 (9th Cir. 1992).

Pursuant to Rule 16(b)(4), a schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

**2. Mr. Yarofalchuw lacked the judge's consent**.

Mr. Yarofalchuw first mentioned an action for excessive force well after the deadline for amendments had passed. ER-6. In order to modify the schedule to allow for a resurrection of the passed deadline, Mr. Yarofalchuw needed the judge's consent. Fed. R. Civ. P. 16(b)(4). The parties did submit a stipulation for the continuation of "pending deadlines of discovery and all other deadlines, except the trial date" which was approved by the judge. ER-85. However, the judge understood the stipulation to only mean the "pending" deadlines and not those which had already passed. ER-5 and ER-9 ("Yarofalchuw's argument that a stay retroactively applies to expired deadlines is unpersuasive."). Thus, Mr. Yarofalchuw lacked the judge's consent to modify the already passed deadline for amending pleadings.

**3. Mr. Yarofalchuw cannot establish good cause because he was always aware of the claim**.

Mr. Yarofalchuw cannot establish good cause under Rule 16(b)(4). From the outset of his case, Mr. Yarofalchuw was aware of his claim for excessive force. ER-67—68 (letter to Mr. Yarofalchuw from Department

of Safety dated September 27, 2021).[5] Mr. Yarofalchuw filed his Complaint on January 3, 2022. ER-197—200. He chose not to incorporate excessive force as a second claim or mention it in his Complaint. *Id*. Mr. Yarofalchuw informed the district court that he did not expect "to add any additional parties or to amend the pleadings." SER-30 and ER-11—12. Based on this information, the district court issued a scheduling order. ER-169—170. The date to amend pleadings passed on April 21, 2022. ER-169. On September 16, 2022, the parties stipulated to stay the "pending deadlines of discovery and all other deadlines except the trial date." ER-85. The stay was clear in that it was for "pending" deadlines and not for extending any already passed deadlines, as it failed to mention any such extension or resurrection of past deadlines. The district court agreed. ER-9—10 ("Common sense dictates that a stay of a

[5] While knowledge of the claim is more pertinent for Rule 15 analysis, it still applies to the Rule 16 diligence prong. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 20000) ("stating that even under the liberal Rule 15 standard, 'late amendments to assert new theories are not reviewed favorably when the facts and theory have been known to the party seeking amendment since the inception of the cause of action'") (citing *Acri v. International Ass'n of Machinists and Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986).

scheduling order would stay pending and remaining deadlines— not expired deadlines.”) and ER-85.

Good cause under Rule 16(b) primarily focuses on the diligence of the party seeking to amend. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (citation omitted). Mr. Yarofalchuw was not diligent in his claim, because he was aware of the claim from the outset but failed to include it in his Complaint even as part of the damages for his unlawful seizure claim. *See M/V American Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (upholding district court denial of leave because no new facts were discovered necessitating amendment, amendment was being made one and a half years after initiating the case, and amendment required different facts which would necessitate additional discovery). Mr. Yarofalchuw’ claim of excessive force was first mentioned almost nine months into the case proceedings;[6] would require proof of new facts, such as the excessive force used during the arrest and the extent of injury, if any, that occurred due to the use of excessive force;

---

[6] Mr. Yarofalchuw filed his Complaint on January 3, 2022, the stipulation to stay was granted September 20, 2022.

and would require additional discovery such as medical records, experts, police use of force policies, and use of force experts. The choice to bring an early motion for summary judgment, which ended up ultimately working against him, thus causing him to change his theory regarding facts known to him before initiating the suit "form the basis of a proper exercise of discretion by the trial court in refusing to allow amendment." *Id*.

**4. Denial Under Rule 15 Would have Been Proper.**

Rule 15 requires the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a)(2). This leave "should be freely given when justice so requires." *Id*. The factors to be considered if justice requires leave to amend include: "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citation omitted).

Mr. Yarofalchuw was required to bring his excessive force claim on its own because excessive force cannot be the basis for an unlawful Fourth Amendment seizure claim. *See County of Los Angeles, California*

*v. Mendez*, 581 U.S. 420, 429 (2017) (finding "If there is no excessive force claim under *Graham*,[7] there is no excessive force claim at all."). In *Mendez*, the Supreme Court held that excessive force claims are not the basis for other Fourth Amendment violations; such claims must exist, and be analyzed on their own. *Id.* ("To the extent that a plaintiff has other Fourth Amendment claims, they should be analyzed separately.")

Mr. Yaroflachuw delayed in including his claim for excessive force because he knew of it prior to filing suit. ER-67—68; *see Jordan v. Los Angeles County*, 669 F.2d 1311, 1324 (9th Cir. 1982) ("Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based, but fails to include them in the original complaint, the motion to amend may be denied"), *vacated on other grounds*, 459 U.S. 810 (1982). Even though the district court did not reach the issue of Rule 15, it properly found that denial was merited because of Mr. Yarafalchuw's knowledge of the claim prior to initiating his suit. ER-13 ("Yarofalchuw knowingly failed to include a set of facts to support a claim of excessive force in his original complaint"). This failure to include

---

[7] *Graham v. Connor*, 490 U.S. 386 (1989).

the claim from the outset also prejudices the Defendants as it would necessitate additional discovery and would reward Plaintiff for his delay in bringing the claim as he was well aware of the claim prior to initiating suit. As such, the District Court did not err in denying Plaintiff's Motion to Amend.

## VIII. CONCLUSION

For the reasons stated above, Appellee respectfully requests that this Court affirm the district court's decision and find that no Fourth Amendment violation occurred, and Plaintiff cannot amend his complaint. Should the Court find a Fourth Amendment Violation, it should still find that qualified immunity applies to Sgt. Cabrera as he did not violate any clearly established law or that any mistake he made was reasonable.

Dated: September 1, 2023

Respectfully submitted,

CNMI Office of the Attorney General

/s/ *J. Robert Glass, Jr.*
J. Robert Glass, Jr. (F0523)
Chief Solicitor

*Attorney for Defendant-Appellee,*
Sergeant John A. Cabrera

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

# Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 23-15279

I am the attorney or self-represented party.

**This brief contains** 5,818 **words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*
  - ( ) it is a joint brief submitted by separately represented parties;
  - ( ) a party or parties are filing a single brief in response to multiple briefs; or
  - ( ) a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated ______.
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ J. Robert Glass, Jr. **Date** 09/01/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Appeal No. 23-15279**

---

**IN THE UNITED STATE COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

**NICHOLAS YAROFALCHUW**
Plaintiff-Appellant,
vs.
**JOHN CABRERA and DANNY FITIAL**
Defendants-Appellees.

---

# ADDENDUM TO BRIEF OF APPELLEE, SERGEANT JOHN A. CABRERA

Appeal from the United States District Court
For the Northern Mariana Islands
The Honorable Ramona V. Manglona
United States District Judge
No. 1:22-CV-00001


J. Robert Glass, Jr. (F0523)
Chief Solicitor
Office of the Attorney General
Honorable Juan A. Sablan
Memorial Building 2nd Floor
Saipan, MP 96950
Tel: (670) 237-7500
Fax: (670) 664-2349
Email: robby_glass@cnmioag.org
*Attorney for Defendant-Appellee Sgt. Cabrera*

# TABLE OF CONTENTS

U.S. Const amend. IV........................................................................1

6 CMC § 3101........................................................................1

6 CMC § 6103........................................................................1

Fed. R. Civ. P. 15........................................................................2

Fed. R. Civ. P. 16........................................................................6

## U.S. CONSTITUTION AMENDMENT IV

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## 6 CMC § 3101:
## Disturbing the Peace

(a) A person commits the offense of disturbing the peace if he or she unlawfully and willfully does any act which unreasonably annoys or disturbs another person so that the other person is deprived of his or her right to peace and quiet, or which provokes a breach of the peace.

(b) A person convicted of disturbing the peace may be punished by imprisonment for not more than six months.

## 6 CMC § 6103:
## Authority to Arrest or Detain Without Warrant

Arrest without a warrant is authorized in the following situations:

(a) Where a breach of the peace or other criminal offense has been committed, and the offender endeavors to escape, the offender may be

arrested by virtue of an oral order of any official authorized to issue a warrant, or without that order if no such official is present.

(b) Anyone in the act of committing a criminal offense may be arrested by any person present, without a warrant.

(c) When a criminal offense has been committed, and a police officer has reasonable grounds to believe that the person to be arrested has committed it, the police officer may arrest the person without a warrant.

(d) Police officers, even in cases where it is not certain that a criminal offense has been committed, may, without a warrant, temporarily detain for examination persons who may be found under such circumstances as justify a reasonable suspicion that they have committed or intend to commit a felony.

## FEDERAL RULE OF CIVIL PROCEDURE 15

**(a) Amendments Before Trial.**

**(1)** ***Amending as a Matter of Course.*** A party may amend its pleading once as a matter of course within:

**(A)** 21 days after serving it, or

**(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

**(2)** ***Other Amendments.*** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

**(3)** ***Time to Respond.*** Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

**(b) Amendments During and After Trial.**

**(1)** ***Based on an Objection at Trial.*** If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the

objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

**(2)** ***For Issues Tried by Consent.*** When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

**(c) Relation Back of Amendments.**

**(1)** ***When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:

**(A)** the law that provides the applicable statute of limitations allows relation back;

**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set

out--or attempted to be set out--in the original pleading; or

**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

**(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

**(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

**(2)** ***Notice to the United States.*** When the United States or a United States officer or agency is added as a defendant by amendment, the notice requirements of Rule 15(c)(1)(C)(i) and (ii) are satisfied if, during the stated period, process was delivered or mailed to the United States attorney or the United States attorney's designee, to the Attorney General of the United States, or to the officer or agency.

**(d) Supplemental Pleadings.** On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

## FEDERAL RULE OF CIVIL PROCEDURE 16

**(a) Purposes of a Pretrial Conference.** In any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences for such purposes as:

**(1)** expediting disposition of the action;

**(2)** establishing early and continuing control so that the case will not be protracted because of lack of management;

**(3)** discouraging wasteful pretrial activities;

**(4)** improving the quality of the trial through more thorough preparation; and

**(5)** facilitating settlement.

**(b) Scheduling.**

**(1) *Scheduling Order.*** Except in categories of actions exempted by local rule, the district judge--or a magistrate judge when authorized by local rule--must issue a scheduling order:

**(A)** after receiving the parties' report under Rule 26(f); or

**(B)** after consulting with the parties' attorneys and any unrepresented parties at a scheduling conference.

**(2) *Time to Issue.*** The judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared.

**(3) *Contents of the Order.***

**(A)** *Required Contents.* The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.

**(B)** *Permitted Contents*. The scheduling order may:

**(i)** modify the timing of disclosures under Rules 26(a) and 26(e)(1);

**(ii)** modify the extent of discovery;

**(iii)** provide for disclosure, discovery, or preservation of electronically stored information;

**(iv)** include any agreements the parties reach for asserting claims of privilege or of protection as trial-preparation material after information is produced, including agreements reached under Federal Rule of Evidence 502;

**(v)** direct that before moving for an order relating to discovery, the movant must request a conference with the court;

**(vi)** set dates for pretrial conferences and for trial; and

**(vii)** include other appropriate matters.

**(4)** ***Modifying a Schedule.*** A schedule may be modified only for good cause and with the judge's consent.

**(c) Attendance and Matters for Consideration at a Pretrial Conference.**

**(1)** ***Attendance.*** A represented party must authorize at least one of its attorneys to make stipulations and admissions about all matters that can reasonably be anticipated for discussion at a pretrial conference. If appropriate, the court may require that a party or its representative be present or reasonably available by other means to consider possible settlement.

**(2)** ***Matters for Consideration.*** At any pretrial conference, the court may consider and take appropriate action on the following matters:

**(A)** formulating and simplifying the issues, and eliminating frivolous claims or defenses;

**(B)** amending the pleadings if necessary or desirable;

**(C)** obtaining admissions and stipulations about facts and documents to avoid unnecessary proof, and ruling in advance on the admissibility of evidence;

**(D)** avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702;

**(E)** determining the appropriateness and timing of summary adjudication under Rule 56;

**(F)** controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37;

**(G)** identifying witnesses and documents, scheduling the filing and exchange of any pretrial briefs, and setting dates for further conferences and for trial;

**(H)** referring matters to a magistrate judge or a master;

**(I)** settling the case and using special procedures to assist in resolving the dispute when authorized by statute or local rule;

**(J)** determining the form and content of the pretrial order;

**(K)** disposing of pending motions;

**(L)** adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems;

**(M)** ordering a separate trial under Rule 42(b) of a claim, counterclaim, crossclaim, third-party claim, or particular issue;

**(N)** ordering the presentation of evidence early in the trial on a manageable issue that might, on the evidence, be the basis for a judgment as a matter of law under Rule 50(a) or a judgment on partial findings under Rule 52(c);

**(O)** establishing a reasonable limit on the time allowed to present evidence; and

**(P)** facilitating in other ways the just, speedy, and inexpensive disposition of the action.

**(d) Pretrial Orders.** After any conference under this rule, the court should issue an order reciting the action taken.

This order controls the course of the action unless the court modifies it.

**(e) Final Pretrial Conference and Orders.** The court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence. The conference must be held as close to the start of trial as is reasonable, and must be attended by at least one attorney who will conduct the trial for each party and by any unrepresented party. The court may modify the order issued after a final pretrial conference only to prevent manifest injustice.

**(f) Sanctions.**

**(1)** ***In General.*** On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:

**(A)** fails to appear at a scheduling or other pretrial conference;

**(B)** is substantially unprepared to participate--or does not participate in good faith--in the conference; or

**(C)** fails to obey a scheduling or other pretrial order.

**(2)** ***Imposing Fees and Costs.*** Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses--including attorney's fees--incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.